**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NIRVANA, L.L.C., | |
| Plaintiff, | Case No. 21-cv-06157 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiff Nirvana, L.L.C. ("Nirvana" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other merchandise, using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Plaintiff Nirvana, L.L.C. is a limited liability company organized and existing under the laws of Washington with its principal place of business in Encino, CA.

5.      Nirvana was formed in Aberdeen, Washington, in 1987.  Characterized by their punk aesthetic, Nirvana soon reached global popularity behind their landmark second album *Nevermind*.  *Nevermind* went on to be certified Diamond by the RIAA and has been dubbed a cultural phenomenon of the 1990s.  In fact, in 2005, the Library of Congress added *Nevermind* to the National Recording Registry as a "culturally, historically or aesthetically important" sound recording.  Nirvana's global popularity and fame continues to grow, with over seventy-five million records sold worldwide, making Nirvana one of the best-selling bands of all time.

6.      Nirvana has earned numerous accolades for its music, including induction into the Rock and Roll Hall of Fame in 2014 (Nirvana's first year of eligibility) and inclusion in both *Rolling Stone's* and *VH1*'s "100 Greatest Artists of All Time."  Nirvana has also received an American Music Award, a Brit Award, and a Grammy Award, as well as seven MTV Video Music Awards and two NME Awards.  Moreover, Nirvana achieved five number-one hits on the *Billboard* Alternative Songs chart and four number-one albums on the *Billboard* 200.

7.      Nirvana has also garnered substantial publicity due to its widespread fame and popularity, including a biography titled *Come As You Are: The Story of Nirvana*, discussing how *Nevermind* and Nirvana marked an epochal generational shift in music.  Nirvana not only popularized "grunge", but it also established the cultural and commercial viability of alternative rock in general.

8.      Products sold under the Nirvana brand include apparel, accessories, and other merchandise, such as drinkware, posters, and photos.

9.      Nirvana branded products are distributed and sold to consumers throughout the United States, including in Illinois, through various affiliates and through the nirvana.com website and shop.nirvana.com webstore.

10.      Plaintiff incorporates a variety of distinctive marks in the design of its various Nirvana products.  As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks.  Plaintiff has also registered its trademarks with the United States Patent and Trademark Office.  Nirvana products often include at least one of Plaintiff's registered trademarks.  Often several of Plaintiff's marks are displayed on a single Nirvana product. Plaintiff uses its trademarks in connection with the marketing of the Nirvana products, including the following marks which are collectively referred to as the "NIRVANA Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 1,836,895 | NIRVANA | For: clothing; namely, shirts, tee shirts, caps in class 025. |
| 1,842,789 | NIRVANA | For: series of sound recordings all featuring performances of a musical artist or group in class 009. |

| | | |
|---|---|---|
| 3,937,416 | NIRVANA | For: Printed materials, namely, posters in class 016.<br><br>For: Entertainment services, namely, providing a website with information on recordings of a musical group and historical information on a musical group and providing online profile pages with photos and information on recordings of a musical group; providing non-downloadable pre-recorded music and video clips via a website and online profile pages in class 041. |
| 4,663,544 | NIRVANA | For: Musical sound recordings; downloadable musical sound recordings; sound recordings featuring performances of a musical group; downloadable sound recordings featuring performances of a musical group; audiovisual recordings featuring music; audiovisual recordings featuring performances of a musical group; downloadable audiovisual recordings featuring music; downloadable audiovisual recordings featuring performances of a musical group in class 009. |
| 5,430,930 |  | For: Shirts; sweatshirts; hooded sweatshirts in class 025. |

| | | |
|---|---|---|
| 5,441,075 |  | For: Audio and video recordings, namely, compact discs featuring music and musical performances; phonograph records featuring music; prerecorded digital media in the nature of audio and visual media, namely, CDs, DVDs, and downloadable audio and video recordings in the field of music; digital music downloadable from the internet; DVDs featuring music and musical performances; downloadable audio and video recordings, namely, downloadable music files, downloadable multimedia files containing audio and video relating to music and musical performances, downloadable MP3 files and MP3 recordings featuring music and musical performances, and downloadable musical and video recordings in the field of music in class 009. |
| 1,797,928 | FLOWER SNIFFIN KITTY PETTIN BABY KISSINCORPORATE ROCK WHORES | For: clothing; namely, tee shirts in class 025. |

11.    The above U.S. registrations for the NIRVANA Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.   The NIRVANA Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned.    The registrations for the NIRVANA Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the NIRVANA Trademarks pursuant to 15 U.S.C. § 1057(b).   Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the NIRVANA Trademarks included in the above table.

12.     The NIRVANA Trademarks are exclusive to Plaintiff and are displayed extensively on Nirvana products and in Plaintiff's marketing and promotional materials.  The Nirvana brand has been extensively promoted and advertised at great expense.  In fact, over the years, Plaintiff, or third parties on Plaintiff's behalf, have expended millions of dollars in advertising, promoting, and marketing featuring the NIRVANA Trademarks, as well as significant time and other resources.  As a result, products bearing the NIRVANA Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Nirvana.

13.     The NIRVANA Trademarks are distinctive when applied to the Nirvana products, signifying to the purchaser that the products come from Nirvana and are manufactured to Plaintiff's quality standards.  The NIRVANA Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the NIRVANA Trademarks is of incalculable and inestimable value to Plaintiff.

14.     For many years, Plaintiff has operated an e-commerce website where it promotes and sells genuine Nirvana products linked to nirvana.com at shop.nirvana.com, including apparel and other tour and retail merchandise.  The nirvana.com website and shop.nirvana.com webstore feature proprietary content, images and designs exclusive to Plaintiff.

15.     Plaintiff's innovative marketing and product designs, combined with the immense popularity of Nirvana, have made the NIRVANA Trademarks famous marks.  The widespread fame, outstanding reputation, and significant goodwill associated with the Nirvana brand have made the NIRVANA Trademarks invaluable assets of Plaintiff.

7

16.     Plaintiff, or third parties on the Plaintiff's behalf, have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the NIRVANA Trademarks.  As a result, products bearing the NIRVANA Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Nirvana.  Nirvana products have become among the most popular of their kind in the world.

**The Defendants**

17.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

19.     The success of the Nirvana brand has resulted in its significant counterfeiting.  Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates

suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

20. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to being selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and

9

having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.  **Exhibit 4** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 4** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187.

21.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

22.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Plaintiff has not licensed or authorized Defendants to use any of the NIRVANA Trademarks, and none of the Defendants are authorized retailers of genuine Nirvana products.

23.     Many Defendants also deceive unknowing consumers by using the NIRVANA Trademarks without authorization within the content, text, and/or meta tags of their e-commerce

stores to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Nirvana products. Other e-commerce stores operating under Seller Aliases omit using the NIRVANA Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Nirvana products.

24.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that

the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

27.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.     Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29.     Defendants are working in active concert to knowingly and wilfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and wilfully used and continue to use the NIRVANA Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

30.     Defendants' unauthorized use of the NIRVANA Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has

caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered NIRVANA Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The NIRVANA Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from products sold or marketed under the NIRVANA Trademarks.

33.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the NIRVANA Trademarks without Plaintiff's permission.

34.     Plaintiff is the exclusive owner of the NIRVANA Trademarks.  Plaintiff's United States Registrations for the NIRVANA Trademarks (Exhibit 1) are in full force and effect.  On information and belief, Defendants have knowledge of Plaintiff's rights in the NIRVANA Trademarks, and are wilfully infringing and intentionally using counterfeits of the NIRVANA Trademarks.   Defendants' willful, intentional and unauthorized use of the NIRVANA Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

35.     Defendants'   activities   constitute   willful   trademark   infringement   and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known NIRVANA Trademarks.

37.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Nirvana or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Nirvana.

40.     By using the NIRVANA Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Nirvana brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the NIRVANA Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Nirvana product or is not authorized by Plaintiff to be sold in connection with the NIRVANA Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Nirvana product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the NIRVANA Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Nirvana;

    d. further infringing the NIRVANA Trademarks and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including

the NIRVANA Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the NIRVANA Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the NIRVANA Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the NIRVANA Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of November 2021.    Respectfully submitted,

<u>/s/ Justin R. Gaudio</u>
Amy C. Ziegler
Justin R. Gaudio
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ibegert@gbc.law

*Counsel for Plaintiff Nirvana, L.L.C.*